IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01935-KAS

J.P.S.[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on the **Social Security Administrative Record** [#10], filed September 25, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for social security disability insurance and supplemental security income pursuant to Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#13] (the "Brief"), Defendant filed a Response [#16] in opposition, and Plaintiff filed a Reply [#17]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#9]; *Reassignment* [#18]; *Order of Reference* [#19].

## I. Background

**A.     Prior Claim[3]**

On July 8, 2013, Plaintiff had filed applications for disability insurance benefits and supplemental security income under Title II and Title XVI on July 8, 2013, alleging disability beginning June 30, 2013, which were ultimately denied due to an unfavorable ALJ decision on November 27, 2015. Tr. 64-81.[4] The Appeals Council denied review on March 6, 2017. Tr. 82-87.

**B.     Current Claim**

On June 8, 2017, Plaintiff protectively filed a Title II application for disability insurance benefits. Tr. 10. He also protectively filed a Title XVI application for supplemental security income on September 18, 2017. *Id.* In both applications, he alleged disability beginning on November 28, 2015, and these claims were initially denied on April 23, 2018. *Id.*, Tr. 104. On August 19, 2019, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 19. On March 4, 2020, the Appeals Council denied review. Tr. 1. On April 10, 2021, Plaintiff filed a complaint in federal court seeking review of the ALJ's decision. *See Compl.* [#1], *[J.P.S.] v. Comm'r, Soc. Sec. Admin.*, Case No. 1:21-cv-01008-REB (D. Colo.). Defendant moved for remand pursuant to sentence four of 42 U.S.C. § 405(g), and on February 7, 2022, the court reversed and remanded the case. Tr. 557-58. The Appeals Council remanded to the ALJ for another hearing, which

---

[3] Ordinarily, prior claims are not relevant but here, Plaintiff argues that the ALJ should have reopened his prior claim, so the Court discusses it to the extent necessary. *See Brief* [#13] at 47-50.

[4] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 10 through 10-8, by the sequential transcript numbers instead of the separate docket numbers.

was held on February 7, 2023. Tr. 475. On April 20, 2023, the ALJ issued another unfavorable decision. Tr. 475-488.

The ALJ first determined that Plaintiff met the insured status requirements through June 30, 2016, and has not engaged in substantial gainful activity ("SGA") since November 28, 2015, the alleged onset date. Tr. 478-79. The ALJ then found that Plaintiff suffers from one severe impairment: chronic migraine headaches. Tr. 479. However, the ALJ also found that Plaintiff's severe and non-severe impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." Tr. 482.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work"[5] with the following exceptions:

> [I]s able to lift or carry 20 pounds occasionally and 10 pounds frequently. He is able [to] stand or walk (with normal breaks) about six hours in an eight-hour workday. He is able [to] sit (with normal breaks) about six hours in an eight-hour workday. He is able to perform pushing and pulling motions with [his] upper and lower extremities within the aforementioned weight restrictions. [Plaintiff] should avoid unprotected heights and moving machinery. [Plaintiff] should never climb ladders, ropes, or scaffolds.

Tr. 482-83. Based on the RFC and the 2019 testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could perform past relevant work as a "grocery store

---

[5] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b).

manager trainee." Tr. 487. The ALJ further found that Plaintiff was a "younger individual age 18-49" on the alleged disability onset date. *Id.* The ALJ noted that Plaintiff "has a limited education" and that transferability of job skills was immaterial to her disability determination because use of the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not he has transferable job skills. *Id.* Finally, the ALJ found that, given the VE's 2019 testimony, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative unskilled occupations of "assembler small products," with approximately 250,000 jobs nationally; "office helper," with approximately 145,000 jobs nationally; and "mail clerk," with approximately 150,000 jobs nationally. Tr. 488. The ALJ therefore found that Plaintiff was not disabled at step four, with alternative findings at step five. Tr. 487-88.

The ALJ's decision has become the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she

is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly

conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.   The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the

claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

## B.   Substantial Evidence

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with

substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal' separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred (1) when determining the persuasiveness of opinion evidence; (2) in assessing Plaintiff's pain; and (3) when determining Plaintiff's RFC. *Brief* [#13] at 34-47. He also argues that his prior claim should be reopened. *Id.* at 47-50. The Court considers the prior claim argument first, as that issue is jurisdictional and therefore defines the scope of the Court's review.

### A.    The Prior Claim

Plaintiff argues that "reopening the prior decision is appropriate and warranted in this case" because "[n]ew material evidence was submitted to the Appeals Council after the decision." *Brief* [#13] at 47, 49. He argues that he impliedly requested reopening when he submitted new evidence (a June 2016 letter and headache impairment questionnaire from Dr. Michael O'Neill) to the Appeals Council in connection with his prior claim. *Id.* at 48-49. In his Reply [#17], for the first time, Plaintiff raises due process arguments: First, he asserts that "the technician entering the initial claim did not follow the [Program Operations Manual System] directive to use the [alleged onset of disability] supplied by Mr. Smith, which led to an implied reopening being missed and reducing his claim to a Title 16 only." *Reply* [#17] at 11. Second, he claims there were multiple errors in

Defendant's handling of both his current and prior claims that rise to the level of constitutional due process violations—including the ALJ's noncompliance with the Appeals Council's remand order in this matter. *Id.* at 11-12. Finally, Plaintiff argues that "[i]f the Court concludes that it does not have jurisdiction over the reopening of the 2015 claim, the inclusion of the prior claim file for its evidentiary value in deciding the merits of the current claim is essential." *Id.* at 13. However, while Plaintiff cites regulations that give *the Agency* discretion to reopen a prior claim, *see* 20 C.F.R. §§ 404.987, 416.1487, he cites no case law showing that *this Court* can or should compel the Agency to do so. *Cf. Rapid Transit Lines, Inc. v. Wichita Devs., Inc.*, 435 F.2d 850, 852 (10th Cir. 1970) (finding a party's failure to cite relevant authority "suggests either that there is no authority to sustain its position or that it expects the court to do its research").

District courts generally lack jurisdiction to review the Agency's refusal to reopen a prior claim. *See, e.g.*, *Califano v. Sanders*, 430 U.S. 99, 107-08 (1977) (holding that section 205(g) of the Social Security Act "cannot be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits"); *Nelson v. Sec'y of Health & Hum. Servs.*, 927 F.2d 1109, 1111 (10th Cir. 1990) (affirming district court finding that it lacked jurisdiction to review the agency's refusal to reopen an application where the claimant had failed to raise a colorable constitutional claim); *Smith v. Chater*, 914 F. Supp. 415, 419 (D. Colo. 1996) (collecting Tenth Circuit cases holding that the decision not to reopen is unreviewable). There are two narrow exceptions: (1) when the Agency's decision constitutes a "de facto reopening of the earlier filed claim," which opens the door to judicial review; and (2) when the claimant raises a

colorable constitutional claim based on the denial of benefits in the prior case. *Finan v. Barnhart*, 327 F. Supp. 2d 1303, 1305 (D. Kan. 2004).

Here, the Court does not find that the ALJ impliedly or de facto reopened the prior claim. At the February 7, 2023 oral hearing, the ALJ directly asked Plaintiff's counsel if he was seeking to reopen the prior decision. *See* Tr. 508. In response, counsel only asked that the ALJ incorporate the prior record. *See id.*  In her decision, the ALJ declined that request after considering whether it was appropriate under the Hearings, Appeals, and Litigation Law Manual (HALLEX) I-2-1-13.B.2.[6] Tr. 476. In the Tenth Circuit, a claim of de facto reopening is precluded when the ALJ expressly refuses to reopen the claim and when her review of the prior claim is confined to whether there is good cause to reopen. *See Finan*, 327 F. Supp. 2d at 1306, 1306 n.11 (citing *Devereaux v. Chater*, No. 95-1196, 1996 WL 98956, at *3 (10th Cir. Mar. 7, 1996) (noting lack of jurisdiction to review ALJ's express declination to reopen). Here, Plaintiff did not ask the ALJ to reopen and she expressly declined his request to incorporate the prior record. Tr. 476.

As for Plaintiff's constitutional due process argument, it is unavailing for two reasons. First, it is waived because he did not raise it until his reply brief, and he still failed to adequately frame and develop it by citing any relevant authority. *See, e.g.*, *Defs. of Wildlife v. U.S. Forest Serv.*, 94 F.4th 1210, 1227 n.10 (10th Cir. 2024) (stating that perfunctory allegations of error that fail to frame and develop an issue are insufficient to

---

[6] HALLEX is a manual that provides guidance and information to hearing level and Appeals Council staff. *See Jose M. U. v. Kijakazi*, No. 20-cv-00469-SH, 2022 WL 476240, at *3 n.5 (N.D. Okla. Feb. 16, 2022). The Tenth Circuit has not decided whether violations of HALLEX procedures are justiciable. *Cf. Lee v. Colvin*, 631 F. App'x 538, 543 & n.3 (10th Cir. 2015); *Jose M.U.*, 2022 WL 476240, at *3 n.5 (noting that the Tenth Circuit has not decided what approach to take amidst a circuit split over whether courts should require the SSA to follow the HALLEX procedures, particularly where procedural errors prejudice claimants).

invoke appellate review); *Staheli v. Comm'r, SSA*, 84 F.4th 901, 908 n.4 (10th Cir. 2023) (finding claimant's argument waived where she had raised it for the first time in her reply brief). Yet even if the Court were to accept Plaintiff's framing of the prior claim as error-prone, Plaintiff fails to establish standing to assert a due process violation because he could have sought judicial review of the Appeals Council's March 2017 denial rather than filing a new claim in June 2017. *Cf., e.g.*, *Rector v. City & Cnty. of Denver*, 348 F.3d 935, 943 (10th Cir. 2003) (finding that a due process claim arising from parking ticket late fees required "a causal connection between the alleged due process violation and the recipient's failure to appeal"); *Rosenbarker v. Barnhart*, 42 F. App'x 270, 271-72 (10th Cir. 2002) (rejecting due process argument where the plaintiff admitted that his failure to timely seek review was not caused by the allegedly defective notices). As for the alleged due process violations in connection with his current claim, Plaintiff does not explain why supposed errors in *his current claim* have any bearing on whether *his prior claim* should be reopened. *See Reply* [#17] at 11. Because there was no de facto reopening of the prior claim, and because Plaintiff has failed to adequately assert a due process violation in connection with his prior claim, neither exception to the jurisdictional bar applies.

Finally, the Court is unpersuaded by Plaintiff's argument that the 2016 Dr. O'Neill letter and questionnaire are "new and material" such that the ALJ should have included the prior claim file for its evidentiary value. *Brief* [#13] at 49; *Reply* [#17] at 13. The ALJ explained that "the current file reflects a statement by Dr. O'Neill that summarizes [Plaintiff's] history." Tr. 476. As for prior Colorado Springs ENT & Allergy records, "the current claim file does reflect examinations by CSNA that predate the alleged onset date." *Id.* Plaintiff does not explain what new, unconsidered information is found in the prior claim

file. More broadly, the ALJ explained, both at the oral hearing and in her written decision, that the 2015-2023 range contained in the current file should be sufficient to establish Plaintiff's longitudinal medical history. *See* Tr. 476 (stating that "[Plaintiff's] longitudinal medical history is established by evidence in the current file"); Tr. 508 (asking Plaintiff's counsel "why do we have to go back to 2012" given the eight-year timeframe of the current claim). Simply put, Plaintiff has not identified any "new and material evidence" that the ALJ could find only in the prior claim file. The Court finds no error in the ALJ's decision not to incorporate the prior claim file.

**B.    Opinion Evidence**

Plaintiff argues that the ALJ erred in her consideration of various medical opinions in the record; namely, those of R. Terry Jones, M.D.; Amy B. Crockett, Ph.D; Mark Suyeishi, Ph.D.; Hillary Weiss, Ph.D.; and Michael J. O'Neill, M.D. *Brief* [#13] at 34-42.[7] Specifically, Plaintiff claims the ALJ's reasoning that those opinions were inconsistent with the record as a whole "is not specific, and, in the case of Dr. Jones' opinion, it was not legitimate." *Id.* at 42.

An ALJ evaluates the persuasiveness of a medical source's opinion using five factors: (1) supportability; (2) consistency; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other factors. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Because supportability and consistency are the most important factors, the ALJ *must* explain how she considered the supportability and

---

[7] Plaintiff mentions other medical sources in passing, including Richard Madsen, PhD; John F. Robinson, PhD, and Louis Martin, MD, though the discussion is so brief that it renders unclear whether Plaintiff takes issue with the ALJ's consideration of these sources. *Brief* [#13] at 36, 39. Any arguments related to these providers are so perfunctory as to preclude appellate review. *Cf. Defs. of Wildlife*, 94 F.4th at 1227 n.10.

consistency of a medical source's opinion, and "'may, but [is] not required to, explain how [she] considered the [remaining factors], as appropriate.'" *J.T.L. v. Kijakazi*, No. 22-cv-02343-NYW, 2023 WL 5017241, at *4 (D. Colo. Aug. 7, 2023) (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)). The analysis can be brief if the record supports brevity. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (stating that the "ALJ must first consider whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.' If the answer to this question is 'no,' then the inquiry at this stage is complete.") (quoting Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). At this stage, the Court's function is merely to determine whether the ALJ followed applicable rules and regulations—it is not to reweigh the evidence or substitute the Court's judgment for that of the ALJ. *Lax*, 489 F.3d at 1084.

### 1.    Dr. Jones

Plaintiff argues that the ALJ should have found Dr. Jones's opinion persuasive, as she previously did in her August 2019 decision. *Brief* [#13] at 34-35; *see* Tr. 14. Plaintiff also argues that the ALJ erred in assessing Dr. Jones's qualifications. *Brief* [#13] at 35.

In the 2019 decision, the ALJ had noted that Dr. Jones had attributed Plaintiff's depression and anxiety to chronic headaches, but that his symptoms "appear to be mild and sometimes moderate." Tr. 14. She found Dr. Jones's opinion was supported with clinical observations and consistent with the record as a whole, "which documents subjective complaints, but no mental health treatment or medication." *Id.* In her current decision, the ALJ took issue with Dr. Jones's opinion that Plaintiff could complete a normal workday without interruption from psychiatric conditions but that his chronic migraines would interfere with concentration, follow-through and appropriate interaction with

coworkers and the public. *Id.* Regarding supportability, the ALJ noted that Plaintiff had done relatively well on Dr. Jones's formal mental status examination in the areas of concentration and memory, and regarding consistency, she noted that Plaintiff consistently had normal concentration on objective mental status examinations. *Id.* (citing Tr. 353, 356, 359). Finally, the ALJ found that Dr. Jones was a mental consultive examiner and that chronic headaches were a physical condition, outside of his purview. *Id.*

To the extent that Plaintiff questions the ALJ's change of mind about the persuasiveness of Dr. Jones's opinions, an ALJ is not bound to follow her prior decision after remand. *See, e.g.*, *Miller v. Barnhart*, 175 F. App'x 952, 955-56 (10th Cir. 2006) ("Preclusion principles, however, do not bind the ALJ to [her] earlier decision. To hold otherwise would discourage [ALJs] from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate.") (internal quotations and citation omitted); *Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) ("It was certainly within the ALJ's province, upon reexamining [the claimant's] record, to revise [the] RFC category."). The Court does not find any error in the ALJ's reconsideration of the persuasiveness of Dr. Jones's opinions.

Overall, the Court finds that the ALJ's discussion of Dr. Jones's opinion properly touches on both supportability and consistency, the two mandatory factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). To the extent that Plaintiff disputes the ALJ's assessment of Dr. Jones's qualifications, the ALJ need not explain how she considered that factor—it is a separate, optional consideration. 20 C.F.R. §§ 404.1520c(b)(2), (c)(3), 416.920c(b)(2), (c)(3) (listing "specialization" as a factor which the ALJ "may, but [is] not required to explain how [it was] considered").

Even if the ALJ had erred in finding Dr. Jones's opinion unpersuasive, the record confirms that this error was harmless. As Plaintiff acknowledges, the ALJ's current assessed RFC is substantively indistinguishable from the RFC that she assessed in August 2019. *See* Tr. 482-83, Tr. 15; *Brief* [#13] at 45. Thus, any change in the persuasiveness of Dr. Jones's opinion between the two decisions had no demonstrable impact on the ALJ's RFC assessment. The Court finds no reversible legal error in the ALJ's analysis of Dr. Jones's opinions.

### 2.    Dr. Crockett

Plaintiff takes issue with the ALJ's reasons for finding Amy B. Crockett, Ph.D.'s (unspecified) opinions unpersuasive, namely: they were not supported by an explanation as to the basis of the assessed limitations, were not tied to any particular objective findings, and were not consistent with the record as a whole, which included numerous normal mental status and psychiatric evaluations. *Brief* [#13] at 36 (citing Tr. 481). Plaintiff submits that Dr. Crockett's summary "reflects her observations, as well as reports by Mr. Smith" and that depression is an ongoing diagnosis as far back as 2013. *Id*. Thus, Plaintiff admits that the ALJ considered both supportability and consistency, he simply disagrees with the ALJ's conclusion. On substantial evidence review, however, the Court may not displace the ALJ's choice between two conflicting interpretations of the evidence. *Lax*, 489 F.3d at 1084. By Plaintiff's own admission, the ALJ considered both required factors.

### 3.    Dr. Suyeishi

Plaintiff acknowledges that the ALJ found persuasive Dr. Suyeishi's opinion that he had no severe mental impairment because it was supported by his explanation and his review of several records and because it was generally consistent with the evidence

as a whole. *Brief* [#13] at 36 (citing Tr. 481). Plaintiff submits, however, that Dr. Suyeishi's opinion is based on a sparse review of the record and is inconsistent with other unspecified medical source opinions, did not involve an examination of Plaintiff, and did not involve a treatment relationship. Again, Plaintiff admits that the ALJ considered supportability and consistency, but he disagrees with the conclusion.

### 4.   Dr. Weiss

Plaintiff acknowledges that the ALJ found "somewhat supported" Dr. Weiss's prior administrative findings, i.e. mild limitations in broad functional areas but moderate limitations in the functional area of concentration, persistence, or pace. *Brief* [#13] at 38. He also acknowledges that the ALJ had found Dr. Weiss's opinion supported by some explanation of her findings, albeit with less detail than Dr. Suyeishi's explanation. *Id*. And Plaintiff acknowledges that the ALJ found Dr. Weiss's opinion inconsistent with the evidence as a whole, which does not reflect ongoing mental health complaints or need for treatment, and which includes largely normal mental status and psychiatric examinations. *Id.* (citing Tr. 481). Plaintiff submits, however, that Dr. Weiss's analysis is more thorough than Dr. Suyeishi's because she reviewed and quoted other documents including a Disability Report-Appeal and notes from an examination. *Id.* Plaintiff yet again admits that the ALJ considered supportability and consistency but asks the Court to reweigh the evidence.

### 5.   Dr. O'Neill

Finally, Plaintiff acknowledges that the ALJ found Dr. O'Neill's opined limitations unpersuasive because they were not supported by treatment records, which contained consistently normal examination findings, and because Dr. O'Neill appeared to rely

entirely on Plaintiff's subjective reports rather than objective findings. *Brief* [#13] at 40 (citing Tr. 486, 487). However, in response to the lack of objective findings supporting Dr. O'Neill's opinion, Plaintiff asserts that no objective tests for migraines existed in January 2018, but that he underwent vestibular and auditory testing, which are typical for migraines. *Id.* Thus, he argues the ALJ's rejection of Dr. O'Neill's opinion is difficult to reconcile with her finding that his migraines are a severe impairment. *Id.* at 41 (citing Tr. 479). Here too, Plaintiff admits that the ALJ considered supportability and consistency with the record—he simply disagrees with her conclusion.

### 6. Non-Examining vs. Examining Medical Sources

Finally, Plaintiff broadly argues that the ALJ erred because she "found persuasive the opinions of the non-examining medical reviewers over the examining doctors." *Brief* [#13] at 41. This is not entirely true—the ALJ repeatedly cited "mental status and psychiatric examinations in the treatment records," which came from Plaintiff's treating providers. *See, e.g.*, Tr. 480-81. Moreover, the ALJ is no longer required to give treating physicians more weight than other medical sources—instead, "the ALJ evaluates them based on their persuasiveness." *C.D.I. v. Comm'r, SSA*, No. 23-1139, 2024 WL 2747569, at *4 (10th Cir. May 29, 2024) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)).[8] Accordingly, the Court finds that the ALJ's discussion of medical source opinions was supported by substantial evidence and was free of legal error.

### C.    Assessment of Plaintiff's Pain

Next, Plaintiff argues that the ALJ erred in "determin[ing] that Plaintiff's statements about pain and intensity were inconsistent with the medical evidence and other evidence

---

[8] The current versions of 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c expressly apply to "claims filed on or after March 27, 2017," and Plaintiff filed this claim on June 8, 2017. *See* Tr. 10.

in the record because 'the medical record does not describe findings that would support additional limitations.'" *Brief* [#13] at 42 (quoting Tr. 15, 483). He argues that "[a] lack of available objective medical evidence substantiating [his] statements about intensity and persistence of pain, and the effect it has on his ability to work[,] is not a valid basis for rejecting those statements." *Id.*

A claimant's complaints of disabling pain are evaluated using a three-step analysis. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987)). The ALJ must determine "(1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what [courts] term a 'loose nexus'); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling." *Id.* (citing *Luna*, 834 F.2d at 163-64). The ALJ may consider the claimant's attempts to seek relief for his pain; his willingness to try any treatment prescribed; regular contact with a doctor; and the possibility that psychological disorders combine with physical problems, along with the claimant's daily activities and the dosage, effectiveness, and side effects of medication. *Luna*, 834 F.2d at 165-66. Social Security Rule 16-3p states that the Agency considers, among other things, a claimant's attempts to seek and follow treatment as evidence that symptoms are intense and persistent. Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017). By contrast, conservative treatment or a failure to follow prescribed treatment may undermine a claimant's allegations of intense and persistent symptoms. *Id.*

Here, the ALJ engaged in the three-step *Luna* analysis. At the first two steps, she found that Plaintiff's medically determinable impairment, i.e. chronic migraine, could reasonably be expected to cause his alleged symptoms, i.e., pain, vertigo, and dizziness. Tr. 483. However, she found that, considering all the evidence, objective and subjective, Plaintiff's symptoms were not in fact disabling. Tr. 483-85. In making that finding, the ALJ discussed the factors set forth in Soc. Sec. Ruling 16-3p. She found that Plaintiff's treatment had been conservative in nature, consisting of medication management, and noted Plaintiff's hearing testimony that he was not currently taking any medication because he had a bad reaction to gabapentin. Tr. 485. The ALJ considered Plaintiff's efforts to seek treatment, including his testimony that he does not see doctors because he gave up, and the fact that he had declined neurological treatment for his migraines, contrary to the recommendation of his ENT, Dr. Keller. *Id.* (citing Tr. 1062); Tr. 531.

Based on these considerations, including Plaintiff's own testimony, the ALJ concluded that "[Plaintiff's] treatment for his impairments has been minimal and conservative, which supports that he would be able to perform work within a light exertional range." Tr. 487. Under current regulations, the ALJ was permitted to consider the frequency and extent of Plaintiff's treatment and whether he sought and followed through with recommended treatment. The Court finds no error in the ALJ's determination that Plaintiff's subjective complaints of disabling pain were inconsistent with the overall evidence of record.

## D.    RFC Assessment

Finally, Plaintiff argues that the ALJ erred by adopting her prior RFC assessment findings based on a VE's testimony at the prior hearing. *Brief* [#13] at 44-45. He suggests

that the ALJ improperly presented hypotheticals to the VE in that prior hearing, but he does not substantiate this argument by explaining which workplace limitations were omitted. *Id.* at 46. He argues that some of the *conditions* the ALJ determined were "nonsevere," such as tinnitus and depression, were not accounted for in the VE hypotheticals. *Id.* at 46-47. However, he does not explain what *workplace limitations* those conditions would require the ALJ to consider. *Cf. Paulsen v. Colvin*, 665 F. App'x 660, 668 (10th Cir. 2016) ("Diagnosis of a condition does not automatically mean that the claimant is disabled; what matters is whether the condition results in work-related limitations.") (citation omitted); *Gallegos v. Kijakazi*, No. 21-1169 DHU/GJF, 2023 WL 2553922, at *11 (D.N.M. Mar. 17, 2023) (stating that "evidence of a mental condition does not equate to a finding of limitation" given the two-step analysis of "(1) identifying a condition and (2) separately assessing whether its symptoms, if any, actually affect the RFC.").

Plaintiff takes issue with the ALJ's description of two specific conditions as "nonsevere": tinnitus and depression. *Brief* [#13] at 46-47. This objection is unpersuasive because the ALJ was required to (and did) consider the combined impact of all Plaintiff's impairments—whether severe or non-severe—throughout the determination process. *See* 20 C.F.R. §§ 404.1523(c), 416.923(c); Tr. 479 (finding Plaintiff's medically determinable mental impairments, i.e. depression, major depressive disorder, adjustment disorder, and somatic disorder, did not, individually or collectively, cause more than minimal limitations in his ability to work), 482 (finding these impairments cause Plaintiff no more than mild limitation in broad functional areas and that the evidence does not indicate more than a minimal limitation in basic work abilities). As for tinnitus, the ALJ

found that "the overall record does not reflect ongoing vocationally relevant limitations related to this condition." Tr. 479, 482.[9] Plaintiff bears the burden of proving disability, but he has failed to make any showing or argument as to how the RFC limitations would need to be changed to address symptoms of his tinnitus or depression. *Cf. Orso v. Colvin*, 658 F. App'x 418, 420 (10th Cir. 2016) (taking issue with the plaintiff's failure "to explain specifically what additional limitations were needed based on his anxiety or any other impairment."). The Court finds that the ALJ's RFC determination is supported by substantial evidence.

In sum, the Court finds that the record contains substantial evidence from which the ALJ concluded that Plaintiff is not entitled to benefits under the Act during the time relevant to this case. The ALJ's decision is free of reversible legal error.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

---

[9] The closest Plaintiff gets is his assertion that "[w]hen tinnitus is loud, it can interfere with the ability to concentrate or hear external sound, which would qualify as vocationally relevant limitations," citing to a webpage URL without explaining why the ALJ (or the Court) should take judicial notice of this contextless citation. *Brief* [#13] at 47 n.27 (citing *Tinnitus – Symptoms and Causes*, The Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/tinnitus/symptoms-causes/syc-20350156 (last visited Sept. 24, 2024)). Even if the Court were to consider this source, it explains that tinnitus "may vary in pitch from a low roar to a high squeal"; that those suffering from tinnitus "may hear it in one or both ears"; and that "[i]n *some cases*, the sound can be so loud it interferes with your ability to concentrate or hear external sound." *Tinnitus – Symptoms and Causes*. The fact that tinnitus can range from mild to severe, from unilateral to bilateral, and *in some cases* can interfere with concentration, does not mean it automatically requires vocational limitations—or that it necessarily does in Plaintiff's case.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: September 25, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge